## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HIGH SCHOOLERS, LLC, | |
|     Plaintiff, | CIVIL ACTION FILE NO. |
| v. | |
| ATLIENS TOURING, INC., | JURY TRIAL DEMANDED |
|     Defendant. | |

## COMPLAINT

Plaintiff High Schoolers, LLC ("Plaintiff") by and through its undersigned attorneys brings this Complaint against Defendant, ATLiens Touring, Inc. ("Defendant") and alleges as follows:

1.    Plaintiff brings this action for unfair competition and other relief arising under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and the statutes and common law of the State of Georgia.

2.    This case arises out of Defendant's improper, willful, unauthorized, and illegal use and registration of the ATLIENS mark.

## PARTIES

3.    Plaintiff High Schoolers, LLC is a limited liability company organized under the laws of Delaware with a principal address of 152 West 57th Street, New York, New York 10019.

1

4.      Defendant ATLiens Touring, Inc. is Nevada corporation with a principal address of 4525 W. Cougar Ave., Las Vegas, Nevada 89139.

## JURISDICTION AND VENUE

5.      This action arises under the Acts of Congress under the Lanham Act, Title 15 U.S.C. § 1051, *et seq*., and Georgia state and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 because this action involves federal questions of law.

6.      This Court has supplemental jurisdiction over the claims brought under state and common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

7.      This Court has personal jurisdiction over Defendant ATLiens Touring, Inc. because they are an Atlanta, Georgia based music duo who perform, sell merchandise, and otherwise transact business in this state and in this District and should reasonably expect that their activities might have consequences herein. Defendant has and continues to sell tickets to concerts and give live performances in this state and District, with its next show being at the Coca-Cola Roxy Theater in Atlanta, Georgia on February 15, 2025. Defendant also advertises, offers for sale, and sells products to consumers in this state and in this District though its interactive website: https://www.atliensofficial.com/, including merchandise bearing the ATLIENS mark.

8.     Therefore, jurisdiction is proper because Defendant transacts business in this state and District, derives revenue from this state and District, and has otherwise established contacts within this state and District making the exercise of personal jurisdiction proper.

9.     Further, Plaintiff's claims arise in this District because Defendant infringes Plaintiff's intellectual property and unfairly competes with Plaintiff in this District.

10.    In light of the forgoing, the exercise of personal jurisdiction over Defendant in this judicial district comports with traditional notions of fair play and substantial justice.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred here and because this District has personal jurisdiction over Defendant.

12.    Pursuant to LR 3.1(B) (3) of the U.S. District Court for the Northern District of Georgia, venue is proper in this Division because a substantial part of the events giving rise to the claims asserted herein occurred in this Division.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Business and Intellectual Property

13.    Plaintiff High Schoolers, LLC is the trademark holding company of the internationally famous hip-hop duo OUTKAST and was established and solely

3

controlled by the two members of OUTKAST, rappers Antwan Patton (p/k/a Big Boi) and André Benjamin (p/k/a André 3000). OUTKAST is one of the most popular and well-known musical duos in the United States and around the world. Throughout their history beginning in 1993, OUTKAST has received six Grammy Awards and has sold over 25 million records. OUTKAST has garnered widespread critical acclaim, with publications such as Rolling Stone and Pitchfork Media listing their albums among the best of their era. OUTKAST has performed live in major venues throughout the United States as well as at major music festivals throughout the world. OUTKAST also has a substantial social media following, including over 2.5 million "likes" and followers on Facebook, over 507,000 followers on Instagram and over 216,000 followers on Twitter.

14.    One of OUTKAST's most well-known and highly regarded studio albums is entitled "ATLiens," which was released on August 27, 1996. OUTKAST's "ATLiens" album received universal acclaim from music critics upon its release and has since been regarded by many to be one of the greatest hip-hop albums of all time. The ATLiens album debuted at number two on the US Billboard 200 chart and sold nearly 350,000 copies in its first two weeks of release. The album has been certified double platinum by the Recording Industry Association of America (RIAA) having shipped two million copies in the United States. The album spawned the extremely popular singles "Elevators (Me & You)," "ATLiens," and "Jazzy Belle."

15.    The album's title is a portmanteau of "ATL"—an abbreviation for Atlanta, Georgia—and the word "aliens."

16.    The word ATLIENS was invented by OUTKAST. Before OUTKAST created it, it was not used in the cultural lexicon and did not exist.

17.    The second single off of the ATLiens album, "ATLiens," was released on August 20, 1996, and reached #35 on the Billboard Hot 100 chart.

18.    In addition to the studio album "ATLiens" and the song "ATLiens," Plaintiff has used the ATLIENS mark as the title of a number of other distinct musical recordings. By way of example, but not necessarily limitation: (i) an album version of the "ATLiens" song was featured on the "ATLiens/Wheelz of Steel" CD Single; (ii) both an album version *and* an instrumental version of the "ATLiens" song was featured on a Maxi Single; (iii) three remixes, a "Bad Boy Remix," a "Bad Boy Instrumental" and a "Bad Boy Alternative Mix" of the "ATLiens" song were featured on a Remix CD single; (iv) a clean version, album version, album instrumental and album acapella version of the "ATLiens" song were featured on a 12" Vinyl Single; and (v) "ATLiens" was used on promo albums distributed by LaFace Records.

19.    In addition, for the 25th anniversary of the "ATLiens" album, OUTKAST released special distinct musical recordings as anniversary bundles, including: (i) the "ATLiens 25th Anniversary Deluxe Edition" which contained the

original "ATLiens" album mixed in Hi-Res 24bit sound and containing 14 previously unreleased instrumental tracks; and (ii) an "ATLiens" single bundle including the album's singles (including the song "ATLiens") and videos of each of the songs. Examples of images of the album covers of several of the distinct releases discussed above are depicted below.

  

 

20.    OUTKAST also made and distributed a music video associated with its "ATLiens" song around the time of its release. In 2013, Plaintiff released a remastered and re-edited version of that music video.

21.    Based on all of the foregoing, the term ATLIENS is used to identify the source of a series of creative works, including but not limited to the distinct creative works discussed above.

22.    "ATLiens" is one of OUTKAST's most well-known and well-regarded songs. As such, OUTKAST has performed and continues to perform "ATLiens" at nearly all (if not every single one) of its full-length live performances.

23.    OUTKAST has also performed songs from the album "ATLiens" as well as the individual song titled "ATLiens" live on many special occasions, such as, for example, at the Apollo Theater in 1996, on Saturday Night Live ("SNL") in 2002, and in Atlanta during its 20th anniversary reunion concert series in 2014. In fact, the "ATLiens" song is so well-known and culturally important that OUTKAST member Big Boi was asked to (and did) perform it at the 2023 Grammy Awards as part of a medley celebrating the 50th Anniversary of the hip-hop genre, with the performance receiving substantial press coverage.

24.    Plaintiff also began selling and distributing merchandise associated with the "ATLiens" album and song around the time of the August 27, 1996 album release date. This merchandise, which prominently features the ATLIENS mark,

serves as a source identifier for Plaintiff as well as Plaintiff's goods and services. This merchandise includes, but is not limited to, clothing goods (such as t-shirts, hats, and sweatshirts) as well as printed items such as concert programs, calendars, prints, and song books.

25.    Since 1996, Plaintiff has continuously sold shirts and other forms of clothing merchandise bearing the ATLIENS mark and in connection with which the ATLIENS mark is used as a source indicator for Plaintiff through various trade channels, including but not limited to brick-and-mortar retail stores (such as Hot Topic), OUTKAST's own online stores, merchandise tables at live performances, and in partnership with other authorized sellers.

26.    This merchandise is used to promote Plaintiff and the "ATLiens" body of work, including but not limited to the "ATLiens" album, the song "ATLiens," all of the distinct musical recordings that can be purchased bearing the ATLIENS mark, OUTKAST's live performances, and OUTKAST's music videos (among other things), such that the ATLIENS mark became a source identifier for Plaintiff as early as 1996.

27.    From time to time since 1996, Plaintiff has sold or authorized the sale of various other types of merchandise (besides shirts, which have been sold continuously) bearing the ATLIENS mark, including prints, posters, baseball bats, hats, pants, tank tops, bottles, jackets, jerseys and hoodies. Examples of authorized

merchandise depicting the ATLIENS mark and using the ATLIENS mark as an

indicator of origin for Plaintiff are depicted below:









28.   Consumers have come to expect that when elements from the name or title of musical works are used on or in connection with goods or services, such as merchandise and live performances, such uses are associated with, authorized by, or licensed by the rights holder; here, by Plaintiff. Thus, when consumers see goods or services offered in connection with the mark ATLIENS, they would reasonably expect that those goods and services are offered by, approved by, authorized by, licensed by, or related to Plaintiff.

29.    In addition to using the ATLIENS mark as a trademark and service mark since at least as early as 1996, Plaintiff has also used the ATLIENS mark in a manner analogous to a trademark or service mark since at least as early as 1996, in all the manners as described above.

30.    Based on Plaintiff's extensive and continuous use of the ATLIENS mark in connection with its goods and services, Plaintiff's ATLIENS mark continues to be widely recognized among the relevant consuming public as a designator of origin with respect to Plaintiff's goods and services.

31.    The ATLIENS mark is a coined term (invented by OUTKAST) and is inherently distinctive for Plaintiff's goods and services.

32.    Given Plaintiff's long history of consistent use of the ATLIENS mark as a source indicator on a wide variety of goods and services, the ATLIENS mark has also acquired distinctiveness as a source identifier for Plaintiff.

33.    The ATLIENS mark serves as a source identifier for Plaintiff such that there is an inextricable association between the ATLIENS mark and Plaintiff in the minds of the relevant consuming public.

34.    As a result of all of the foregoing, Plaintiff has common law rights in and to the ATLIENS mark dating back to at least as early as 1996.

35.    The ATLIENS mark was conceived of, used, popularized, and made famous by Plaintiff in 1996. Plaintiff has used the ATLIENS mark as a trademark

and service mark and/or in a manner analogous to trademark or service mark use without cessation since 1996.

36.    Based on Plaintiff's extensive and continuous use of the ATLIENS mark as a trademark and service mark and in a manner analogous to trademark and service mark use, as well as the significant accolades OUTKAST and its ATLIENS album and song have received over the last twenty-five years, the ATLIENS mark has become, and is still, famous.

37.    The ATLIENS mark points uniquely and unmistakably to OUTKAST.

38.    The term ATLIENS is inextricably associated with OUTKAST.

39.    Plaintiff is also the owner of all right, title and interest in and to the following United States Trademark and Service Mark Applications for its mark ATLIENS, which are presently valid and subsisting in law (collectively, Plaintiff's Applications"):

- ATLIENS, Serial No. 90/748,879, a pending application in Class 41 for *Entertainment in the nature of live audio visual performances by a musical group; Entertainment in the nature of live visual and audio performances by a musical group; Entertainment services by a musical group, namely, production of musical sound recordings; Entertainment, namely, personal appearances by a musical group; Providing entertainment information about performances, recordings, appearances, news, and other information about a musical group via a website on a global computer network; music publishing services; music composition services; media production services, namely, video and film production; music production services; arranging, organizing, conducting and hosting social entertainment events.*

- ATLIENS, Serial No. 90/748,808, a pending application in Class 9 for *Series of musical video recordings; downloadable music video recordings featuring*

*music and entertainment; audiovisual recordings featuring music and entertainment; downloadable audiovisual recordings featuring music and entertainment.*

- ATLIENS, Serial No. 90/748,790, a pending application in Class 9 for *Series of musical sound recordings; downloadable musical sound recordings; pre-recorded CDs and vinyl records featuring music.*

- ATLIENS, Serial No. 90/748,864, a pending application in Class 25 for *Clothing, namely, t-shirts, shirts, jackets, jerseys, beanies, baseball hats, headwear, shorts, sweatpants, tank tops, sweatshirts, long sleeve shirts, hooded sweatshirts, hooded shirts, bandanas, wristbands as clothing, headbands, one-piece garments for babies, jumpsuits, socks, shoes and sleepwear.*

- ATLIENS, Serial No. 90/748,853, a pending application in Class 16 for *Printed books in the field of entertainment, posters, photographs, stickers, concert programs, calendars, song books.*

Printouts from the United States Patent and Trademark Office's ("USPTO") online database of Plaintiff's applications and status and title information from the USPTO's Trademark Status & Document Retrieval system ("TSDR") for these applications are attached hereto as **Exhibit A**.

40.    Plaintiff has invested a tremendous amount of time, money and other resources advertising, promoting, and marketing its goods and services provided under its ATLIENS mark.

41.    Plaintiff's goods and services provided under the ATLIENS marks are (and have been since 1996) the subject of widespread media attention and, indeed, have become famous.

42.    As set forth above, Plaintiff's ATLIENS mark has acquired substantial consumer recognition, goodwill and fame and has become an important source indicator that identifies the quality goods and services sold and provided by Plaintiff, including but not limited to musical recordings, live musical performances, apparel, and other merchandise. For all of the foregoing reasons, Plaintiff's ATLIENS mark is an exceedingly valuable asset of Plaintiff.

**Defendant's Unauthorized Use and Registration of the ATLIENS Mark**

43.    Many years after Plaintiff commenced use of the ATLIENS mark as a trademark and service mark, many years after Plaintiff acquired common law rights in the ATLIENS mark, many years after Plaintiff commenced use of its ATLIENS mark in a manner analogous to trademark or service mark use, and many years after the ATLIENS mark became famous and inextricably associated with OUTKAST, Defendant formed an electronic dance music ("EDM") duo in Atlanta, Georgia.

44.    Upon information and belief, Defendant selected the name ATLIENS for their EDM duo to trade upon the tremendous fame and goodwill associated with Plaintiff's ATLIENS album, song, and mark, or, at a minimum, to call to consumers' minds Plaintiff's famous ATLIENS album, song, and mark.

45.    Defendant subsequently began using the ATLIENS mark to promote its music on its website and in other promotional material, with examples of such use set forth below:





46.     Defendant also began using the ATLIENS mark on merchandise, including but not limited to t-shirts and sweatshirts:



47.    Defendant adopted a space and alien theme and routinely uses images
of spaceships and aliens alongside the ATLIENS mark as part of its promotional
materials, and also sells merchandise consistent with this extraterrestrial theme
bearing the ATLIENS mark:



48.    Unbeknownst to Plaintiff, in 2020, again many years after Plaintiff commenced use of the ATLIENS mark as a trademark and service mark, many years after Plaintiff's acquired common law rights in the ATLIENS mark, many years after

Plaintiff's commenced use of its ATLIENS mark in a manner analogous to trademark or service mark use, and many years after the ATLIENS mark became famous and inextricably associated with OUTKAST, Defendant obtained United States Service Mark Registration No. 6,136,315 ("Defendant's Registration") for the mark ATLIENS in International Class 41 for *music composition and transcription for others; music composition for others; music composition services; music production services; music publishing services; composition of music for others; entertainment services in the nature of recording, production and post-production services in the field of music; entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network; entertainment, namely, live music concerts; production of music; production of sound and music video recordings; providing on-line music, not downloadable; providing online music, not downloadable.*

49.    In connection with the above registration, Defendant claimed a date of first use in 2012, many years after Plaintiff commenced use of the ATLIENS mark as a trademark and service mark, many years after Plaintiff acquired common law rights in the ATLIENS mark, many years after Plaintiff commenced use of its ATLIENS mark in a manner analogous to trademark or service mark use, and many

years after the ATLIENS mark became famous and inextricably associated with OUTKAST.

50.     Defendant's ATLIENS mark is identical to Plaintiff's ATLIENS mark.

51.     Apart from their use of the identical mark, ATLIENS, the similarities between the Plaintiff and Defendant are substantial. For example, both are duos from Atlanta, Georgia, both perform and record music in related musical genres (hip-hop/R&B and EDM), and both have promoted their music, live performances, and related goods and services using space and/or alien themed imagery.

52.     The duo comprising Defendant performs with masks on, thereby concealing their identities such that consumers will mistakenly believe that the members of Defendant are one and the same with – or at least somehow connected to – Plaintiff.

53.     Plaintiff did not give consent or approval to Defendant to use the ATLIENS mark or any variation thereof.

54.     Plaintiff also did not give consent or approval to Defendant to file a service mark application directed to the ATLIENS mark or any variation thereof.

55.     Defendant's use of the ATLIENS mark is likely to cause confusion, to cause mistake, or to deceive the public into the false belief that the services offered by Defendant come from or are otherwise sponsored by, connected with, or affiliated with Plaintiff.

56.     In fact, Defendant's use of the ATLIENS mark has already caused actual confusion amongst consumers, which confusion will no doubt continue to occur. Specifically, consumers have previously and will continue to mistakenly believe that Defendant's goods and services originate from or are otherwise sponsored by, connected with, approved by, or affiliated with Plaintiff.

57.     The USPTO has cited likelihood of confusion with Defendant's Registration as a ground to refuse registration of Plaintiff's Applications.

58.     Thus, the continued registration of Defendant's ATLIENS mark would not only prevent registration of Plaintiff's Applications but will support and assist Defendant in the confusing and misleading use of the ATLIENS mark, will give color of exclusive statutory rights to Defendant in violation and derogation of the prior and superior rights of Plaintiff, and will dilute the value of Plaintiff's famous ATLIENS mark.

59.     For all of the foregoing reasons, Defendant's unauthorized use of the ATLIENS mark, in which Plaintiff has senior rights, has already damaged and will continue to damage Plaintiff, and Defendant's registration of the ATLIENS mark is inconsistent with, and damaging to, Plaintiff's prior rights in and to its ATLIENS mark.

60.     In light of all of the foregoing, Plaintiff instituted Trademark Trial and Appeal Board Cancellation Proceeding No. 92079645 (the "TTAB Proceeding") against Defendant, which proceeding is still pending.

61.     During the pendency of the TTAB Proceeding and attempts to negotiate an amicable resolution to the dispute, Defendant not only continued to use the ATLIENS mark but did so to promote an upcoming show in Atlanta mimicking advertisements for OUTKAST's 20th anniversary show, also in Atlanta:

 

62.     Management for OUTKAST has already received communications from third-parties querying whether OUTKAST was affiliated with Defendant's upcoming show.

63.    Defendant's actions demonstrate that it knowingly, willfully, intentionally, and maliciously adopted and uses the ATLIENS mark (and continued to use it in the face of Plaintiff's objections) and demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff.

## COUNT I

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP UNDER THE LANHAM ACT

64.    Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

65.    Plaintiff holds valid and subsisting rights in and to the ATLIENS mark that predate any priority date upon which Defendant can rely.

66.    Due to the substantial similarities between Defendant and Plaintiff, as well as Defendant's use of a mark identical to Plaintiff in connection with identical services, as well as the fact that Defendant's members conceal their identity, Defendant's use of the ATLIENS mark to promote its music and live performances, as well as on its merchandise, is likely to cause confusion, to cause mistake, or to deceive the public into the false belief that the goods and services offered by Defendant come from or are otherwise sponsored by, connected with, endorsed by, associated with, approved by, authorized by, or affiliated with Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's ATLIENS mark.

68.     As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, serious and irreparable harm for which there is no adequate remedy at law.

69.     As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT II

## DILUTION UNDER THE LANHAM ACT

70.     Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

71.     As a result of its distinctiveness and widespread use and promotion throughout the United States for nearly three decades, Plaintiff's ATLIENS mark is a famous mark within the meaning of Section 43(c) of the Lanham Act.

72.     Plaintiff's ATLIENS mark became famous prior to the filing date and date of first use by Defendant.

73.     Upon information and belief, Defendant adopted Plaintiff's mark to try to create an association with Plaintiff or to otherwise call to mind Plaintiff, its goods

and services, or its famous ATLIENS series of musical recordings, live performances, and merchandise.

74.    Defendant's use of Plaintiff's famous mark impairs the distinctiveness of Plaintiff's famous mark and causes Plaintiff's famous mark to lose its ability to serve as a unique identifier for Plaintiff as well as Plaintiff's goods and services.

75.    Defendant's use of Plaintiff's famous mark also negatively impacts the value of Plaintiff's famous mark.

76.    Due to the substantial similarities between Defendant and Plaintiff, as well as Defendant's use of a mark identical to Plaintiff in connection with identical services, as well as the fact that Defendant's members conceal their identity, consumers and the public are likely to assume that Defendant is connected to or affiliated with Plaintiff.

77.    Further, due to Defendant's use of a mark identical to Plaintiff in connection with identical services, the public has been led to believe that an association exists between Plaintiff and Defendant, harming the reputation of Plaintiff and Plaintiff's ATLIENS mark.

78.    Therefore, Defendant's use of the ATLIENS mark dilutes or is likely to dilute the distinctiveness of Plaintiff's ATLIENS mark by eroding the public's exclusive identification of the ATLIENS mark with Plaintiff, tarnishing and degrading the positive association and prestigious connotations of the ATLIENS

mark, and otherwise lessening the capacity of the ATLIENS mark to identify and distinguish Plaintiff's goods and services.

79.    Defendant's use of the ATLIENS mark is causing and is likely to continue to cause dilution by blurring and dilution by tarnishment of Plaintiff's mark in violation of Section 2(c) of the Lanham Act, 15 U.S.C. § 1125(c).

80.    As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

81.    As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT III

## CANCELLATION OF REGISTRATION NO. 6,136,315 ON THE GROUND OF LIKELIHOOD OF CONFUSION, DILUTION AND FALSE SUGGESTION OF A CONNECTION

82.    Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

83.    This Court may order the cancellation of registrations, in whole or in part, pursuant to 15 U.S.C. § 1119.

84.    Defendant's Registration covers the identical ATLIENS mark in Class 41 for *music composition and transcription for others; music composition for others;*

*music composition services; music production services; music publishing services; composition of music for others; entertainment services in the nature of recording, production and post-production services in the field of music; entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network; entertainment, namely, live music concerts; production of music; production of sound and music video recordings; providing on-line music, not downloadable; providing online music, not downloadable.*

85.    Defendant's ATLIENS mark so resembles Plaintiff's ATLIENS mark as to be likely, when applied to Defendant's goods and services, to cause confusion, to cause mistake, or to deceive the public into the false belief that the goods and services offered by Defendant under Defendant's registered mark come from or are otherwise sponsored by, connected with, endorsed by, associated with, approved by, controlled by, or affiliated with Plaintiff, in violation of Section 2(d) of the Lanham Act.

86.    Defendant's registered ATLIENS mark is identical and confusingly similar to Plaintiff's mark, and Defendant's continued registration would be inconsistent with, and damaging to, Plaintiff's prior rights in and to Plaintiff's ATLIENS mark.

87.    Plaintiff has priority of use in connection with Plaintiff's ATLIENS mark in connection with musical group related goods and services by virtue of its earlier date of first trademark and service mark use, and/or use analogous to trademark and service mark use, of said mark over any date that can be established by Defendant. Specifically, the underlying application for Defendant's mark was filed on February 18, 2020, and claims September 1, 2012 as its date of first use anywhere and October 11, 2012 as its date of first use in commerce. Each of the foregoing dates are many years after the release of Plaintiff's album "ATLiens," the release of Plaintiff's song "ATLiens," and the commencement of sales of merchandise under the Plaintiff's ATLIENS mark, the establishment of ATLIENS as a source identifier for Plaintiff, Plaintiff acquiring common law rights in the ATLIENS mark, and the ATLIENS mark becoming famous and inextricably intertwined with OUTKAST.

88.    Defendant's Registration covers services, including but not limited to entertainment services, namely, providing non-downloadable prerecorded music, and entertainment, namely, live music concerts, which are identical to services that Plaintiff has provided under the ATLIENS mark continuously from 1996 to the present day.

89.    It is quite common for individuals or entities that provide the Class 41 services covered by the subject registration to also provide related goods (such as

sound recordings) and merchandise, including apparel, under the same marks. In fact, both Plaintiff and Defendant provide such related goods.

90.    Plaintiff's aforementioned application for its ATLIENS mark in International Class 41 covers the following services: *entertainment in the nature of live audio visual performances by a musical group; entertainment in the nature of live visual and audio performances by a musical group; entertainment services by a musical group, namely, production of musical sound recordings; entertainment, namely, personal appearances by a musical group; providing entertainment information about performances, recordings, appearances, news, and other information about a musical group via a website on a global computer network; music publishing services; music composition services; media production services, namely, video and film production; music production services; arranging, organizing, conducting and hosting social entertainment events*. Accordingly, the parties' respective services are essentially identical.

91.    The continued registration of the identical, and famous, ATLIENS mark in Class 41 for the aforementioned services will lead to consumers mistakenly believing that Defendant's goods and services are associated with, sponsored by, endorsed by, affiliated with, approved by, controlled by, provided by, or otherwise connected to Plaintiff, which of course they are not. There is no question that the

parties' respective services are identical (as are the marks) such that consumer confusion is not only likely, but inevitable.

92.    Plaintiff's ATLIENS mark has been used consistently and has been inextricably intertwined with Plaintiff since long before any date of first use or constructive date of first use by Defendant of the mark that is the subject of Defendant's Registration.

93.    Plaintiff's ATLIENS mark also became famous long before any date of first use or constructive date of first use by Defendant of its registered mark.

94.    Plaintiff's mark points uniquely and unmistakably to Plaintiff, serves to identify Plaintiff, and has done so since long before any date of first use or constructive date of first use by Defendant of its registered mark.

95.    OUTKAST is in no way connected with or to any services covered by Defendant's Registration, any goods provided by Defendant, or any activities performed by Defendant under the ATLIENS mark.

96.    Plaintiff will be damaged by the continued registration of Defendant's mark as such registration is preventing Plaintiff from being able to obtain registrations for its senior ATLIENS mark, is supporting and assisting Defendant in the confusing and misleading use of the identical mark in connection with identical services, and is diluting the value of Plaintiff's famous ATLIENS mark.

97.     Because Defendant's Registration is damaging Plaintiff, is likely to cause confusion with Plaintiff's mark in violation of Section 2(a) of the Lanham Act, falsely suggests a connection to Plaintiff in violation of Section 2(a) of the Lanham Act, and dilutes Plaintiff's famous mark by both blurring and tarnishment in violation of Section 2(c) of the Lanham Act, the Court should order its cancellation.

## COUNT IV

## TRADEMARK INFRINGEMENT UNDER GEORGIA COMMON LAW

98.     Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

99.     Defendant is using an identical ATLIENS mark in a way that is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are associated or connected with Plaintiff, or has the sponsorship, endorsement, approval, or in some other way legitimately connected to Plaintiff, thereby damaging Plaintiff and its reputation.

100.    Defendant's acts constitute infringement of Plaintiff's rights in its common law trademark and service mark ATLIENS under Georgia common law.

101.    Defendant acted with knowledge of Plaintiff's use of and rights to the ATLIENS mark without regard to the likelihood of confusion of the public created by Defendant's activities.

102.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the ATLIENS mark, and to mislead the consuming public.

103.   As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

104.   As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief, damages, costs, and punitive damages.

## COUNT V

## UNFAIR COMPETITION UNDER GEORGIA COMMON LAW

105.   Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

106.   Defendant's acts complained of herein constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or business.

107.   Defendant's acts were undertaken and performed in bad faith and Defendant's unfair competition was and continues to be willful and intentional.

108.   Defendant's conduct has and will continue to cause irreparable harm and damage for which there is no adequate remedy at law.

109.   As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief, damages, costs, and punitive damages.

## COUNT VI

## UNFAIR COMPETITION UNDER O.C.G.A. § 23-2-55

110.   Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

111.   Defendant's aforesaid acts constitute an attempt to encroach on the business of Plaintiff with the intention of deceiving and misleading the public by using an identical mark and name to that owned by and used by Plaintiff.

112.   Defendant's use of Plaintiff's ATLIENS mark is causing, and is likely to continue causing, confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are affiliated, connected, or associated with Plaintiff, or has the sponsorship, endorsement, or approval of Plaintiff, when that is not the case.

113.   Defendant is using the identical ATLIENS mark with the intention of deceiving and misleading the public and constitutes unfair competition in violation of O.C.G.A. § 23-2-55.

114.   Defendant's conduct has and will continue to damage Plaintiff.

## COUNT VII

## DILUTION UNDER O.C.G.A. § 10-1-451(b)

115.   Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

116.   As a result of Plaintiff's extensive promotion and use of its ATLIENS mark, it has become a famous, distinctive, and well-known source indicator for Plaintiff and of Plaintiff's goods and services.

117.   Defendant's unauthorized use of the ATLIENS mark dilutes the distinctiveness of the ATLIENS mark by lessening the uniqueness of Plaintiff's mark, eroding the public's exclusive identification of this mark with Plaintiff, and by tarnishing and degrading the positive associations and prestigious connotations of the mark, in violation of O.C.G.A § 10-1-451(b).

118.   As a result of Defendant's conduct, Plaintiff has suffered irreparable harm and is entitled to injunctive relief, damages, and costs.

## COUNT VIII

## DECEPTIVE TRADE PRACTICES UNDER GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

119.   Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

120.   Defendant's unauthorized use of Plaintiff's ATLIENS mark is causing, and is likely to continue causing, confusion, deception, and mistake by creating the

false and misleading impression that Defendant's goods and services are affiliated, connected, or associated with Plaintiff, or has the sponsorship, endorsement, or approval of Plaintiff, when that is not the case.

121.  Defendant's aforesaid acts constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq*.

122.  Defendant's deceptive trade practices have damaged and will continue to damage Plaintiff and the consuming public.

## COUNT IX

## INJUNCTION

123.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

124.  Plaintiff and the consuming public will be irreparably harmed if Defendant is not enjoined from using the ATLIENS mark in connection with its musical recordings, live performances, and merchandise.

125.  Plaintiff does not have an adequate remedy at law for Defendant's ongoing misconduct, and entry of an injunction will serve the public interest.

## COUNT X

## COST OF LITIGATION UNDER O.C.G.A. § 13-6-11

126.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

127.   Defendant's aforesaid acts constitute a bad faith, willful effort to deceive and mislead the public and trade off the goodwill of the Plaintiff by knowingly using an identical mark and name to that owned by and used by Plaintiff.

128.   Likewise, Defendant has been stubbornly litigious and caused Plaintiff unnecessary trouble and expense. More specifically, Defendant repeatedly refused to resolve this matter—and even published an inflammatory imitation of Plaintiff's own ATLIENS concert poster in the middle of negotiations—despite Plaintiff's clear priority ownership of the ATLIENS mark for the same goods and services.

129.   As a result of Defendant's bad faith conduct, stubborn litigiousness, and the unnecessary trouble and expense Plaintiff has been subjected to, Defendant is entitled to recover the costs of this litigation, including but not limited to attorney's fees in an amount to be proven at trial.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

1.   That the Court enter judgment against Defendant and in favor of Plaintiff;

2.   That Defendant and its officers, directors, agents, employees and all those in privity or acting in concert with Defendant, and each of them, be permanently enjoined and restrained from, directly or indirectly:

(a)     Using the name and mark ATLIENS or any other marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of its goods and services;

(b)     Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's ATLIENS mark as to be likely to cause confusion, mistake, or deception;

(c)     Using any other marks, slogans, designs, or designations intended to call to mind Plaintiff and/or OUTKAST or any of OUTKAST's members or works of authorship;

(d)     Falsely designating the origin, sponsorship, endorsement, or affiliation of the Defendant's goods or services in any manner;

(e)     Otherwise competing unfairly with Plaintiff and/or OUTKAST in any manner;

(f)     Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's and/or OUTKAST's business and goodwill pertaining thereto;

(g)     Using any deceptive trade practices whatsoever, including those complained of herein, which tend to falsely misrepresent Plaintiff or OUTKAST's sponsorship of, approval of, certification of, association with, connection with, or certification of Defendant's goods or services;

(h)     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

3.     That U.S. Service Mark Registration No. 6,136,315 be cancelled.

4.     That the Defendant be required to pay to Plaintiff its compensatory, incidental, and consequential damages.

5.     That the Defendant be required to account for and pay to Plaintiff all gains, profits, and advantages derived by it from the unlawful activities alleged herein.

6.     That the Defendant be required to pay enhanced, trebled, and/or punitive damages because of the willful and unlawful acts as alleged herein.

7.     That the Defendant be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.

8.     That Defendant be required to deliver for destruction at Defendant's expense all promotional materials, packaging, posters, signs, advertisements, promotional flyers, cards, brochures, clothing, merchandise, and any other materials that bear the trademark or service mark ATLIENS together with all plates, molds, matrices, templates, files and other means and materials for making or reproducing the same.

9.     That Defendant be required to remove any and all online use of the ATLIENS mark including via any of its websites, social media accounts or otherwise, and that Defendant be required to take steps necessary to remove any use

of the ATLIENS mark that is associated with any of Defendant's goods or services on any third-party website or online source.

10.     That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Respectfully submitted, this 20th day of August, 2024.

/s/ Joshua M. Kalb
Joshua M. Kalb
Georgia Bar No. 142493
BARNES & THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326-1092
Tel. (404) 264-4031
Josh.Kalb@btlaw.com

Abigail J. Remore
(*pro hac vice* application forthcoming)
Jessica H. Zafonte
(*pro hac vice* application forthcoming)
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
Tel. (973) 325-1500
ajremore@csglaw.com
jzafonte@csglaw.com

*Counsel for High Schoolers, LLC*